## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094 <br><br> THIS DOCUMENT RELATES TO ALL CASES <br><br> JUDGE KAREN SPENCER MARSTON |
| Susan Walters <br><br> _____, <br><br> Plaintiff(s) <br><br> v. <br><br> Novo Nordisk A/S, et al. <br><br> _____, <br><br> Defendant(s). | COMPLAINT AND JURY DEMAND <br><br> CIVIL ACTION NO.: _____ |

## SHORT FORM COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff(s) named below, by and through the undersigned counsel, file(s) this *Short-Form Complaint and Demand for Jury Trial* against the Defendants selected below. Plaintiff(s) adopt(s) and incorporate(s) by reference the allegations, claims, and the relief sought in *Plaintiffs' Amended Master Long Form Complaint and Demand for Jury Trial (ECF 481) ("Master Complaint")*, and any subsequent amended versions of such Master Complaint, filed in *In Re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 in the United States District Court for the Eastern District of Pennsylvania, as it relates to the selected Defendants and Causes of Action. Plaintiff(s) file(s) this *Short-Form Complaint* as permitted by Case Management Order ("CMO") No. 27 (ECF 503).

1

## <u>IDENTIFICATION OF PARTIES</u>

### <u>Plaintiff(s)</u>

1.    Full (first, middle, and last) name of Plaintiff injured/deceased due to use of GLP-1 RA Product(s): <u>Susan Walters                                                    </u>.

2.    If applicable, full name(s) and representative capacity of Plaintiff(s) alleging wrongful death claim: <u>                                                        </u>, as <u>                                    </u> of the estate of <u>                                    </u>, deceased.

3.    If applicable, full name(s) of Plaintiff(s) alleging survival claims, as permitted under state law(s): <u>                                                    </u>.

4.    If applicable, full name(s) of Plaintiff(s) alleging loss of consortium or loss of services: <u>                                                        </u>.

### <u>Defendant(s)</u>

5.    Plaintiff(s)/Decedent's Representative is/are suing the following Defendant(s) (check all that apply):

<u> X </u> Novo Nordisk Inc.

<u> X </u> Novo Nordisk A/S

<u>        </u> Eli Lilly and Company

<u>        </u> Lilly USA, LLC

<u>        </u> other(s) (identify): <u>                                        </u>

## JURISDICTION AND VENUE

6.    City and state of Plaintiff(s)' current residence (or in a case brought on behalf of a Decedent, Decedent's last permanent residence):

Stoneville, North Carolina

7.    State where Plaintiff/Decedent was prescribed the GLP-1RA Product(s) at issue:

North Carolina

8.    State of Plaintiff's/Decedent's residence at time of their use of the GLP-1RA Product(s) at issue:

North Carolina

9.    City and state of Plaintiff(s)'/Decedent's residence at time of diagnosis of injury:

Stoneville, North Carolina

10.    Jurisdiction is based on:

_X_    diversity of citizenship pursuant to 28 U.S.C. § 1332

_____    other (plead in sufficient detail as required by applicable rules):

_____

_____

11.    The District Court(s) where Plaintiff(s) might have otherwise filed this Short Form Complaint, absent this Court's CMO No. 14, and/or to where remand could be ordered:

Middle District of North Carolina

12.    Venue is proper in the District Court identified in Paragraph 11 because:

_X_    a substantial part of the events and omissions giving rise to Plaintiff(s)' claims occurred there

_____ other (plead in sufficient detail as required by applicable rules):

_____

_____

13.    If applicable, identify the citizenship of any additional Defendant(s) named above:

_____

**PRODUCT USE**

14.     Plaintiff/Decedent used the following GLP-1 RA Product(s) for which claims are

being asserted in this case (check all that apply):

     __X__    Ozempic (semaglutide)

     _____    Wegovy (semaglutide)

     _____    Rybelsus (oral semaglutide)

     _____    Victoza (liraglutide)

     _____    Saxenda (liraglutide)

     _____    Trulicity (dulaglutide)

     _____    Mounjaro (tirzepatide)

     _____    Zepbound (tirzepatide)

     _____    Other(s) (specify): _____

15.     To the best of Plaintiff(s)' knowledge, Plaintiff/Decedent used GLP-1 RA

Product(s) during the following approximate date range(s) (month(s) and year(s)) (if multiple

products, specify date range(s) for each product):

Ozempic (June 2022 - December 2022)

_____

_____

_____

_____

## <u>INJURIES AND DAMAGES</u>

16.     To the best of Plaintiff(s)' knowledge, as a result of using GLP-1 RA Product(s),

Plaintiff/Decedent suffered the following injuries, including their sequelae (check all that apply):

    X    Gastroparesis

_____ Other gastro-intestinal injuries (specify) _____

_____ Ileus

_____ Ischemic Bowel/Ischemic Colitis

_____ Intestinal Obstruction

_____ Necrotizing Pancreatitis

_____ Gallbladder Injury (specify) _____

_____ Micronutrient Deficiency

_____ Wernicke's encephalopathy

_____ Aspiration

_____ Death

    X    Additional/Other(s) (specify): interference with normal bowel function _____

17.     Plaintiff's/Decedent's injuries occurred in approximately (month and year)?

Interference with normal bowel function causing intractable nausea, vomiting,

abdominal pain, and delayed gastric emptying (Nov 2022 - June 2023)

Gastroparesis (March 2023)

_____

18.     In addition, as a result of Plaintiff's/Decedent's use of GLP-1 RA Product(s), Plaintiff(s) suffered personal and economic injuries, pain and suffering, emotional distress, mental anguish, and the following damages (check all that apply):

    <u>  X  </u> Injury to self

    <u>      </u> Injury to person represented

    <u>  X  </u> Economic loss

    <u>      </u> Wrongful death

    <u>      </u> Survivorship

    <u>      </u> Loss of services

    <u>      </u> Loss of consortium

    <u>      </u> other(s) (specify): _____

**CAUSES OF ACTION**

19.    In addition to adopting and incorporating by reference the Master Complaint as stated above, more specifically, Plaintiff(s) hereby adopt(s) and incorporate(s) by reference the following Causes of Action and allegations asserted in the Master Complaint (check all that apply):

_X_ Count I:    Failure to Warn – Negligence

_X_ Count II:    Failure to Warn – Strict Liability

_X_ Count III:    Breach of Express Warranty/Failure to Conform to Representations

_X_ Count IV:    Breach of Implied Warranty

_X_ Count V:    Fraudulent Concealment/Fraud by Omission

_X_ Count VI:    Fraudulent/Intentional Misrepresentation

_X_ Count VII:    Negligent Misrepresentation/Marketing

_X_ Count VIII:    Strict Product Liability Misrepresentation/Marketing

_X_ Count IX:    Innocent Misrepresentation/Marketing

_X_ Count X:    Unfair Trade Practices/Consumer Protection (see below)

_X_ Count XI:    Negligence

_X_ Count XII:    Negligent Undertaking

_____ Count XIII: State Product Liability Act (see below)

_____ Count XIV: Wrongful Death

_____ Count XV:  Loss of Consortium

_____ Count XVI: Survival Action

_X_ Other(s) (specify, and on separate pages, plead additional facts supporting any above claim in sufficient detail as required by applicable rules):

Counts V & VI see Attachment "A"

_____

_____

_____

_____

20.     If Plaintiff(s) is/are asserting a claim pursuant to the unfair trade practices or

consumer protection statutes of any jurisdiction as identified in Count X above:*

      a.   Indicate the specific statute (including subsections) under which Plaintiff(s)

         is/are bringing such claims:

         N.C. Gen. Stat. §§ 75-1.1, 75-16

_____

_____

      b.   Identify the factual allegations supporting those claims (by subsection, if

         applicable):

         See Attachment "B"

_____

_____

_____

_____

_____

*** Plaintiffs asserting any such claims are on notice that "failure to identify [these claims] with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 74 n.33.**

21.    If Plaintiff(s) is/are asserting a claim pursuant to the Product Liability Act

("PLA") of any jurisdiction as identified in Count XIII above:*

      a.    Indicate the specific statute (including subsections) under which Plaintiff(s)

        is/are bringing such claims:

_____

_____

_____

      b.    Identify the legal theories identified in Paragraph 19 above (*e.g.*, negligent

        failure to warn, fraud, etc.) that are subsumed within Plaintiff(s)' PLA claim:

_____

_____

_____

      c.    Identify the factual allegations supporting those claims:

_____

_____

_____

_____

_____

_____

***\* Plaintiffs asserting any such PLA claims are on notice that "failure to identify the PLA claims with the requisite specificity will result in the short form complaint being stricken with only one opportunity to amend." Opinion (ECF 465) at 76 n.35.***

22.    If pre-suit notice is required by statute, did Plaintiff(s) provide some form of

separate pre-suit notice to Defendant(s)? \_\_\_N/A\_\_\_\_.  If so, attach such notice.

10

**RELIEF**

Plaintiff(s) pray(s) for relief and judgment against Defendants of compensatory damages, punitive and/or exemplary damages, interest, costs, attorneys' fees, and such further relief as the Court deems equitable and just, and as set forth in the *Master Complaint*, as appropriate, and any additional relief to which Plaintiff(s) may be entitled.

**JURY DEMAND**

Plaintiff(s) hereby demand(s) a trial by jury as to all claims triable by jury in this action.

Date: 11/18/2025

By:

/s/ George T. Williamson

FL Bar No. 85585

Farr Law Firm P.A.

99 Nesbit Street

Punta Gorda, FL 33950

(941) 639-1158 / gwilliamson@farr.com

**Attachment "A"**

**Fraud Supplement (Counts V & VI)**

1.      Plaintiff incorporates by reference the factual allegations in the Master Complaint, including its paragraphs 721-779 (Count V) and 780-800 (Count VI), as though set forth fully at length herein.

2.      Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the GLP-1 RA Products used by Plaintiff.

3.      At all relevant times, Defendants had a duty to accurately and truthfully represent the known risks and benefits of their GLP-1 RA Products to Plaintiffs and their prescribing physicians.

4.      Defendants knew or should have known that their GLP-1 RA Products were unreasonably dangerous and had gastrointestinal adverse effects that were of a greater severity, intensity, frequency, and duration than represented.

5.      Defendants knew their representations regarding the drugs' safety, efficacy, and side-effect profile were material to the decisions of patients and prescribers.

6.      Despite this knowledge, Defendants intentionally and knowingly made false and material misrepresentations and concealed material facts with the intent to mislead and induce Plaintiffs and their prescribing physicians to use and prescribe the GLP-1 RA Products.

**Count V: Fraudulent Concealment / Fraud by Omission**

7.      Defendants, having a duty to disclose, intentionally concealed and omitted the following material facts, thereby creating a false and misleading impression of the GLP-1 RA Products upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a. Risk of Severe GI Injuries: Concealing the true risk of severe, persistent, and debilitating gastrointestinal conditions, including gastroparesis, bowel/intestinal obstruction/blockage, and ileus.

b. Inadequate Gastric Emptying Tests: Concealing that representations of a "minor" gastric delay were based on inadequate testing (e.g., the acetaminophen absorption test, which only measures liquid emptying) and that Defendants knew or should have known this testing did not reflect the drug's true impact on solid food digestion.

c. Misleading Clinical Trial Data: Concealing the fact that clinical trial participants were frequently treated with anti-emetic medications (anti-nausea drugs) to manage GI side effects, thereby skewing the data and making the "mild to moderate" side effect profile reported in marketing materials false and misleading.

d. "Bogus" Weight-Loss Claims (Rebound Effect): Concealing that patients are highly likely to regain the weight after discontinuing the drug, and that maintaining any weight loss requires lifelong, continuous use of the medication.

e. "Bogus" Weight-Loss Claims (Muscle Loss): Concealing that a significant portion of the total weight lost is often lean muscle mass, not just fat, which can lead to negative health outcomes.

## Count VI: Fraudulent / Intentional Misrepresentation

8. Defendants made the following affirmative and material misrepresentations, which were false when made and upon which Plaintiff and/or Plaintiff's prescribing physician justifiably relied:

a.  Defendants made representations in widespread direct-to-consumer advertising (including television commercials and product websites) that patients using a Novo Nordisk GLP-1 RA could "lose weight and keep it off" . These representations were false and misleading because Defendants knew and concealed the material facts that (1) patients are highly likely to regain the weight after discontinuing the drug, requiring lifelong use, and (2) a significant portion of the weight lost is often unhealthy lean muscle mass.

b.  Defendants made misrepresentations to the public and to Plaintiff by airing the widespread "Oh, Oh, Oh, Ozempic" television commercial, which falsely created a misleading impression of the drug's safety profile. Specifically, the commercial represented a character saying, "Oh - no increased risk!" which was an incomplete and misleading statement of safety that tended to assure viewers the drug was completely safe. Furthermore, while the commercial mentioned common gastrointestinal (GI) side effects like nausea and vomiting, it intentionally minimized the risk by failing to clarify the severe, incessant, and debilitating nature of these symptoms. Defendants concealed and omitted all mention of serious adverse events that they knew or should have known to be associated with Ozempic use, including vision changes, gastroparesis, and the risk of delayed gastric emptying. These omissions created a deceptive net impression intended to induce consumers to request the product.

c.  Defendants made representations to Plaintiff's prescribing physicians through sales representatives, medical websites (like NovoMedlink), and other physician-directed marketing that the most common gastrointestinal side effects, such as

nausea and vomiting, were "mild to moderate" in severity and "transient" or of "short duration." These representations were false and misleading as Defendants concealed that these side effects were often severe, debilitating, and persistent, and that clinical trial data was skewed by the undisclosed use of anti-emetic medications.

9.      Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' misrepresentations to the medical community, including the false claims that gastrointestinal side effects were merely "mild to moderate" and "transient." In parallel, Plaintiff justifiably relied on Defendants' widespread direct-to-consumer advertising, which falsely represented that the drug would help patients "lose weight and keep it off." Relying on this false and misleading net impression that Ozempic and Trulicity were a safe, effective, and long-term solution for weight management with only minor and temporary side effects, Plaintiff's physician was induced to prescribe the drugs and Plaintiff was induced to take them.

10.     Had Defendants disclosed the true risks of severe gastroparesis and other gastrointestinal injuries, the inadequacy of their safety testing, and the true, qualified nature of the weight-loss benefits, Plaintiff would not have used the product, and/or Plaintiff's prescribing physician would not have prescribed it.

11.     As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiff was caused to suffer serious and dangerous injuries, which resulted in severe and personal injuries, physical pain, mental anguish, diminished enjoyment of life, as well as the need for future medical treatment and other damages, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

12.    As a result of Defendants' fraudulent concealment and misrepresentations, Plaintiff suffered bodily injuries and consequent economic and other losses, including pain and suffering, loss of a normal life, medical expenses, lost income and disability, and is entitled to recover compensatory, exemplary, and/or punitive damages.

## ATTACHMENT "B"

## UNFAIR TRADE PRACTICES / CONSUMER PROTECTION SUPPLEMENT

1.      Plaintiff incorporates by reference the factual allegations in the Master Complaint and its paragraphs 850-65 as though set forth fully at length herein.

2.      Plaintiff brings this claim against the Defendants identified in paragraph 5 of the Short Form Complaint ("Defendants").

3.      Plaintiff brings this claim under the statute, and relevant subsections, identified in Paragraph 20(a) of the Short Form Complaint (the "Statute").

4.      The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA" or the "Statute") makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1.

5.      Plaintiff and/or Defendants are "persons" under the Statute.

6.      Plaintiff is a consumer who purchased one or more GLP-1 RA Products for personal, family, and/or household purposes.

7.      Defendants are the suppliers, manufacturers, advertisers, and/or sellers of the GLP-1 RA Products, subject to liability under the Statute for fraudulent, unfair, deceptive, and unconscionable consumer sales practices.

8.      Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the GLP-1 RA Products into the stream of commerce, and therefore owed not only a duty of reasonable care to avoid causing harm to those that consumed it, such as Plaintiff, but also

separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA Products.

9.　　Defendants marketed and advertised the GLP-1 RA Products to consumers, physicians, and other healthcare entities in North Carolina. In addition, Defendants sold the GLP-1 RA Products to residents of North Carolina; shipped GLP-1 RA Products to North Carolina; and otherwise engaged in trade or commerce, or conducted business, related to the GLP-1 RA Products in North Carolina. Defendants' misconduct described herein significantly affected North Carolina consumers.

10.　　As alleged in the Master Complaint, Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices in violation of the Statute by, among other things:

　　　a.　Misleading consumers regarding the safety risks associated with use of their GLP-1 RA Products and overstating the weight-loss benefits and understating risks from using the GLP-1 RA Products;

　　　b.　Excessively advertising, marketing and overpromoting their GLP-1 RA Products, including turbo-charging the pre-existing extensive direct-to-consumer marketing campaign with use of telehealth providers and promoting the drugs off-label; and

　　　c.　Failing to disclose that they performed research and testing in a manner that would lead to under-reporting of the severe risks of using the GLP-1 RA Products.

11.　　As described in the Master Complaint, including in the paragraphs cited in paragraph 856 of the Master Complaint as well as paragraphs 447 through 576 of the Master Complaint, at all relevant times, Defendants knew or should have known, including from preclinical trials, premarket clinical trials, post-market surveillance, adverse event reports, and published scientific papers, that the GLP-1 RA Products posed serious health risks to users. Despite

2

this knowledge, Defendants continued to mislead consumers by omitting, understating, or downplaying risks associated with use of their GLP-1 RA Products.

12.    As described in the Master Complaint, including in paragraphs 577 through 601 of the Master Complaint, at all relevant times, Defendants knew or should have known that their GLP-1 RA Products are not as effective for weight loss as Defendants claimed. Despite espousing significant weight-loss benefits, Defendants knew that the average person loses only a small percentage of their body weight while on GLP-1 RA Products, a significant percentage of patients experience minimal to no weight loss, many people stop taking GLP-1 RA Products relatively quickly, and many people who discontinue use gain back as much as — or more than — the weight they lost while using the GLP-1 RA Products. Despite this knowledge, Defendants continued to mislead consumers by overstating the products' weight-loss benefits.

13.    The information referenced above that Defendants misrepresented, concealed and did not disclose, was material. A reasonable person, including Plaintiff, would find that information, which was related to their health and well-being, such as the serious adverse health risks associated with the use of the GLP-1 RA Products and the limits of the products' efficacy, to be important when deciding whether to purchase and/or use the GLP-1 RA Products.

14.    Defendants intentionally concealed the foregoing material information from consumers, users, prescribers, physicians and other health care providers, including Plaintiff and Plaintiff's health care providers, because to do otherwise would have resulted in fewer prescriptions written for, and fewer purchases of, the GLP-1 RA Products.

15.    Defendants violated the Statute by failing to disclose the material health and safety information regarding the GLP-1 RA Products discussed above to consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of

Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

16.    Defendants violated the Statute by making numerous representations about the weight-loss benefits of taking GLP-1 RA Products while concealing additional information related to the purported weight-loss benefits from consumers, users, physicians, health care providers and others, including Plaintiff and Plaintiff's health care providers, in any of Defendants' marketing and promotional materials, advertising, packaging, labeling, websites, and/or any other public communication.

17.    Plaintiff was exposed to and justifiably relied upon Defendants' widespread, national direct-to-consumer advertising campaign for Ozempic. In all these materials, Defendants promoted the benefit of weight loss while misrepresenting and omitting the true nature, severity, and duration of gastrointestinal side effects and the serious risks of gastroparesis. This advertising exposure included, but was not limited to, frequently seeing the "Oh, Oh, Oh, Ozempic" (Magic) television commercials on national television both before and during the period Plaintiff was using the product. This commercial falsely created a misleading impression of the drug's safety profile. Specifically, the commercial represented a character saying, "Oh - no increased risk!" which was an incomplete and misleading statement of safety that tended to assure viewers the drug was completely safe. Furthermore, while the commercial mentioned common gastrointestinal (GI) side effects like nausea and vomiting, it intentionally minimized the risk by failing to clarify the severe, incessant, and debilitating nature of these symptoms. Defendants concealed and omitted all mention of serious adverse events that they knew or should have known to be associated with Ozempic use, including vision changes, gastroparesis, and the risk of delayed gastric emptying.

18.    Defendants knew that the misrepresentations, omissions and concealment of material safety and efficacy information in the GLP-1 RA Products' packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures rendered them false, deceptive, inadequate, and misleading.

19.    In violation of the Statute, though a pervasive pattern of false and misleading statements and omissions to health care providers and consumers, Defendant(s) engaged in unlawful intentional conduct by overstating benefits of GLP-1 RA Products and omitting or downplaying side effects and complications of the products.

20.    In violation of the Statute, Defendants' conduct described herein constitutes the knowing and willful act, use, or employment of deception, false promise, misrepresentation, and unfair practices, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of goods, merchandise and/or consumer merchandise (*i.e.*, the GLP-1 RA Products), in trade or commerce, and was done with the intention that consumers such as Plaintiff would rely upon such conduct in purchasing or using the GLP-1 RA Products.

21.    Defendants' conduct was fraudulent and deceptive because the material misrepresentations and omissions had the capacity or tendency to deceive and, in fact, did deceive reasonable consumers, including Plaintiff.

22.    Plaintiff justifiably relied on Defendants' misrepresentations and omissions and if Plaintiff had known the information that Defendants withheld and concealed, Plaintiff would not have purchased or used the GLP-1 RA Products.

23.    As a result of such deceptive packaging, labels, advertisements, promotional materials, websites, and other communications and disclosures, Plaintiff purchased and/or used the GLP-1 RA Products in justifiable and reasonable reliance on Defendants misrepresentations

5

and omissions. Defendants expected or should have expected reasonable consumers to rely on these misrepresentation and omissions, in part, because the omitted information directly relates to consumers' health and well-being.

24.     Plaintiff at all times acted as a reasonable consumer in relying upon Defendants' misrepresentations and material omissions concerning Defendants' GLP-1 Products in choosing to purchase and/or consume the GLP-1 RA Products prescribed by their health care provider.

25.     The actions and omissions of Defendants are uncured or incurable.

26.     As alleged above, Defendants had actual knowledge of the defective and dangerous condition of the GLP-1 RA Products and failed to take any action to cure those conditions.

27.     As a direct and proximate result of Defendants' misconduct described herein, Plaintiff has suffered serious injuries, economic and non-economic losses, and other damages, all of which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence, including those set forth in paragraphs 16 to 18 in the Short Form Complaint.

28.     Accordingly, pursuant to the Statute, Plaintiff seeks to recover statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees, and equitable relief as appropriate, and all such other relief as the Court deems proper.